IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARISA ZUNIGA, on behalf of herself and
all others similarly situated,

      Plaintiff,

vs.                                                                    Civ. No. 18-683 KG/KRS

TRUEACCORD,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

      This matter comes before the Court upon Defendant's Motion for Summary Judgment, filed June 17, 2019.  (Doc. 26).  Plaintiff filed a response on July 1, 2019.[1]  (Doc. 34). Defendant filed a reply on July 16, 2019.  (Doc. 41).  Defendant also filed a Notice of Supplemental Authority on October 17, 2019.  (Doc. 48).  The Court further notes that Plaintiff filed a Motion for Certification as a Class Action on June 17, 2019, which is fully briefed and pending.  (Doc. 29).  Having considered the Motion for Summary Judgment, the accompanying briefing, and the Notice of Supplemental Authority, the Court grants the Motion for Summary Judgment and denies the Motion for Certification as a Class Action as moot.

---

[1] The Court notes that Plaintiff failed to comply with Local Rule 10.6, which requires a party to mark "portions of an exhibit the party wishes to bring to the Court's attention…."  Any future violation of this Local Rule will result in the Court striking the exhibit.  Also, the Court assumes that Defendant agreed to allow Plaintiff to exceed the 50-page limitation for exhibits since Defendant did not raise the issue in its reply.  *See* D.N.M. LR-Cv 10.5 (permitting parties to agree to exceed 50-page limitation for exhibits).

*I.  Summary of Facts Viewed in the Light Most Favorable to Plaintiff*[2]

In February 2017, Plaintiff entered into a loan agreement with Golden Valley Lending. *See* (Doc. 26-1).  After Plaintiff failed to repay the loan, Defendant began debt collection efforts on behalf of Golden Valley Lending's parent company, Mountain Summit Financial, Inc.  *See* (Doc. 26-2).  Plaintiff admits that she owes $1,585.00 on the Golden Valley Lending loan.  (Doc. 26-3) at 4, depo. at 72.

On March 2, 2018, Defendant sent an email to Plaintiff regarding the $1,585.00 balance on the Golden Valley Lending loan.  (Doc. 26-5).  In that email, Defendant offered "payment options" that Plaintiff could review by clicking on a "convenient online payment option" hyperlink.  *Id.*

On April 20, 2018, Plaintiff clicked on the "convenient online payment option" hyperlink which opened a page displaying three installment options to pay the $1,585.00 debt in full:  three installments of $529.00; six installments of $265.00; and nine installments of $177.00.  (Doc. 26) at 2, ¶ 6; (Doc. 26-6).  This linked page (the first linked page) showed only the highest installment payment for each installment option.  *Id.*; (Doc. 26-7).  Consequently, multiplying the installment payment by the number of installments totaled more than the $1,585.00 owed: an additional $2.00 under the three-month installment option ($1,587.00); an additional $5.00 under the six-month installment option ($1,590.00); and an additional $8.00 under the nine-month installment option ($1,593.00).  *See* (Doc. 26-6).  The first linked page did not have a section for entering payment information to begin an installment plan.  *Id.*

The first linked page also contained green hyperlinks, stating "Choose Offer," located under each of the three installment options.  *Id.*  The green hyperlinks connected to pages

---

[2] Unless otherwise noted, the parties do not dispute the facts set forth in the summary of facts.

detailing future payment dates and payment amounts for each installment option.  (Doc. 26-7).

The three-month installment offer page displayed two equal payments of $529.00 and a final

payment of $527.00, totaling $1,585.00; the six-month installment offer page displayed five

equal payments of $265.00 and a final payment of $260.00, totaling $1,585.00; and the nine-

month installment offer page displayed eight equal payments of $177.00 and a final payment of

$169.00, totaling $1,585.00.  *Id.* The first linked page did not indicate that the installment

options would be later calculated as described above.  (Doc. 26-6).  Furthermore, a consumer

could only enter payment information to start an installment plan after clicking on a "Choose

Option" hyperlink.  (Doc. 26-7).

    Plaintiff opened the March 2, 2018, email, because she was interested in paying off the

loan.  (Doc. 26-3) at 2, depo. at 66.  Upon viewing the first linked page, Plaintiff multiplied

$529.00 by three months and multiplied $265.00 by six months.  Doing so, Plaintiff discovered

that the totals for those two installment options exceeded the amount she owed by $2.00 to

$8.00.  (Doc. 34-3) at 59.  Nonetheless, Plaintiff could not afford to pay $529.00 or $265.00 a

month, let alone an additional $2.00.  (Doc. 34-3) at 60-61; (Doc. 26-3) at 2-3, depo. at 66-67.

Plaintiff did not multiply $177.00 by nine months because she also could not afford to pay

$177.00 a month.  (Doc. 26-3) at 3, depo. at 67.

    Although Plaintiff saw the "Choose Offer" hyperlinks, Plaintiff did not click on any of

those hyperlinks.  *See* (Doc. 34-3) at 74-75.  Had Plaintiff clicked on the "Choose Offer"

hyperlink for the three-month installment option, she would not have selected that installment

plan because she could not afford to do so.  (Doc. 41-1) at 2, depo. at 62.  In fact, Plaintiff had

just $50.00 a month that she could contribute to pay off her loan.  *Id.* at 4, depo. at 69.

Nonetheless, Plaintiff testified at her deposition that if multiplying $177.00 by nine months had

equaled $1,585.00, as represented in the first linked page, she would have selected the nine-month installment plan.  (Doc. 34-3) at 120.

To prepare the installment options on the first linked page, Defendant's computer system divided the amount owed by three months, six months, and nine months, rounding each installment payment up to the nearest dollar.[3]  (Doc. 26-8) at 4, depo. at 15.  Hence, the installment options on the first linked page do not total the amount owed.  However, Defendant's policy, "in terms of the programming," prevents payments from exceeding the total balance owed.  *Id.*  Had Plaintiff clicked on any of the "Choose Offer" hyperlinks and selected an installment plan, she would have paid only the amount she owed, $1,585.00.  *Id.* at 5, depo. at 17.

## II.  The Class Action Complaint (Doc. 1)

Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act (FDCPA) by initially presenting her with installment options that exceeded the balance on the Golden Valley Lending loan.  Specifically, Plaintiff brings two FDCPA counts on behalf of herself and a putative class.  (Doc. 1) at ¶ 27.  In Count I, Plaintiff alleges a violation of 15 U.S.C. § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  *Id.* at ¶ 38.  In Count II, Plaintiff alleges a violation of 15 U.S.C. § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect a debt."  *Id.* at ¶ 43.  Plaintiff concedes in the response to the Motion for Summary Judgment that she "is not seeking actual damages in this matter and … is

---

[3] As a result of this lawsuit, Defendant no longer rounds installment payments up to the nearest dollar.  (Doc. 26-8) at 3, depo. at 8.

solely seeking statutory damages, attorneys [sic] fees and costs in this matter." [4]   (Doc. 34) at 10, ¶ 16.

### III.  The Motion for Summary Judgment

Defendant moves for summary judgment on Counts I and II.  Defendant argues first that Plaintiff lacks Article III standing to bring this lawsuit because she has not suffered an injury in fact.  Second, Defendant argues that the first linked page did not make any false, deceptive, or misleading statements in violation of Section 1692e.  Third, Defendant argues that, if it did make any false, deceptive, or misleading statements in the first linked page, those statements were not material and, thus, not in violation of Section 1692e.  Finally, Defendant argues that it is entitled to a *bona fide* error affirmative defense as to Counts I and II.  *Id.*  Plaintiff contests these arguments.

### IV.  Summary Judgment Standard

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If a defendant is also moving for summary judgment based on an affirmative defense, "[t]he defendant ... must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."  *Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir.1997) (citations omitted).  Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).  A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[4] Defendant had argued in the Motion for Summary Judgment that the Court should limit damages to statutory damages and attorney's fees and costs.  (Doc. 26) at 1.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

*V. Discussion*

    *A. Article III Standing*

    Defendant argues first that Plaintiff lacks Article III standing because she has not suffered a concrete injury in fact. Defendant specifically contends that Plaintiff "was never at risk of paying more than the exact amount of her balance and therefore never at risk of suffering any actual harm." (Doc. 26) at 5. Plaintiff, however, argues that since Defendant violated her substantive rights under the FDCPA, as opposed to any FDCPA procedural rights, she need not allege any further harm to demonstrate Article III standing.

    Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). To present a case or controversy under Article III, a plaintiff must establish standing to sue. *Id.* (citations omitted). Article III standing requires a plaintiff to demonstrate (1) "injury in fact," (2) a "causal connection" between that injury and the complained-of conduct, and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). Defendant asserts that Plaintiff has not met the injury in fact requirement for Article III standing. Defendant does not argue that Plaintiff has failed to meet the causal connection and redressability requirements.

    It is well-known that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting

*Lujan*, 504 U.S. at 560).  Contrary to Plaintiff's argument, Defendant argues that merely failing

to comply with the FDCPA does not automatically establish a concrete harm sufficient to meet

the injury in fact requirement for Article III standing.  Defendant argues, instead, that Plaintiff

must show an actual concrete injury resulting from the alleged FDCPA violations.  Defendant

cites *Spokeo*, primarily, and several cases applying *Spokeo* Article III standing principles, to

support that argument.

        In *Spokeo*, the plaintiff alleged procedural violations of the Fair Credit Reporting Act

(FCRA).[5]  On appeal from the Ninth Circuit, the Supreme Court addressed the sole issue of

whether the plaintiff had Article III standing to bring the FCRA lawsuit.  In considering the issue

of a concrete injury in fact, the Supreme Court noted that an intangible injury can be concrete for

Article III standing purposes.  *Id.* at 1549.  "In determining whether an intangible harm

constitutes injury in fact, both history and the judgment of Congress play important roles."  *Id.*

Moreover, a "risk of real harm" from "the violation of a procedural right granted by statute" can

satisfy the concreteness requirement.  *Id.*

        In the context of the FCRA violations alleged in *Spokeo*, the Supreme Court concluded

that "Congress plainly sought to curb the dissemination of false information by adopting

procedures designed to decrease that risk."  *Id.* at 1550.  Yet, the Supreme Court also concluded

that the plaintiff "cannot satisfy the demands of Article III by alleging a bare *procedural*

violation" without "any concrete harm."  *Id.* 1549-50 (emphasis added).  The Supreme Court

remanded the case because the Ninth Circuit "did not address the question framed by [the

_____

[5] The relevant FCRA provisions required consumer reporting agencies to "follow reasonable
procedures to assure maximum possible accuracy of" consumer reports; notify providers and
users of consumer information of their responsibilities under the FCRA; limit the circumstances
in which such agencies provide consumer reports "for employment purposes;" and to post toll-
free numbers for consumers to request reports.  *Spokeo*, 136 S.Ct. at 1545.

Supreme Court's] discussion, namely, whether the particular *procedural* violations alleged in this case entail a degree of risk [of harm] sufficient to meet the concreteness requirement" needed to establish an injury in fact.  *Id.* (emphasis added).

Defendant also cites *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019). In *Casillas*, the plaintiff alleged a procedural violation of the FDCPA, namely that a debt collection letter failed to notify her that she must dispute the debt or verify the debt in writing. *Id.* at 332.  Having discussed *Spokeo*, the Seventh Circuit held that the plaintiff "cannot demonstrate standing simply by pointing to [the defendant's] *procedural* violation."  *Id.* at 333 (emphasis added).  Rather, the plaintiff "must show that the violation harmed or presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect" under the FDCPA.  *Id.* (citation and quotation marks omitted).  The Seventh Circuit further acknowledged that *Casillas* is like those Seventh Circuit cases in which it "held that *procedural* injuries under consumer-protection statutes are insufficiently concrete to confer standing."  *Id.* at 335 (emphasis added).  In addition, the Seventh Circuit distinguished *Casillas* from *Robertson v. Allied Solutions*, 902 F.3d 690 (7th Cir. 2018)*,* a FCRA case in which the Seventh Circuit held that "[a]n informational injury can be concrete when the plaintiff is entitled to receive and review *substantive* information."  *Id.* at 697 (emphasis added).  The Seventh Circuit observed that "[u]nlike the Fair Credit Reporting Act, the provisions of the Fair Debt Collection Practices Act that [the defendant] violated do not protect a consumer's interest in having an opportunity to review and respond to *substantive* information."  926 F.3d at 334.

Next, Defendant cites *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018).  In *Hagy*, the plaintiffs alleged that the defendant violated a FDCPA procedural provision by failing to disclose in a letter to the plaintiffs that the letter came from a debt collector.  *Id.* at 619.  In

discussing Article III standing and *Spokeo*, the Sixth Circuit noted that "[n]ot all *procedural* violations, not even all inaccuracies, cause real harm." *Id.* at 621 (emphasis added). The Sixth Circuit reversed the district court's determination that "a bare violation" of the FDCPA provision requiring disclosure of debt collectors suffices to establish injury in fact. *Id.* at 622-23.

Defendant further cites *Bock v. Pressler & Pressler, LLP*, 658 Fed. Appx. 63 (3d Cir. 2016). In *Bock*, the plaintiff alleged that the defendant violated the FDCPA when it "made a false or misleading representation" under Section 1692e "by filing a state complaint without meaningful attorney review." *Id.* at 64. The Third Circuit noted that *Spokeo* was pending before the United States Supreme Court at the time of oral argument and could potentially impact the Article III standing issue in cases like *Bock* "when the alleged injury to the plaintiff flows from the violation of a *procedural* right granted by statute." *Id.* (emphasis added). The Third Circuit noted that "[t]he issue presented in *Spokeo* was whether the violation of a *procedural* right granted by statute presents an injury sufficient to constitute an 'injury-in-fact'…." *Id.* at 65 (quoting *Spokeo*, 136 S.Ct. at 1547 (emphasis added)). The Third Circuit remanded the case to the district court to determine whether the plaintiff has Article III standing "[g]iven the Supreme Court's directive in *Spokeo* regarding the need for a court to specifically address concreteness and particularization…." *Id.*

Additionally, Defendant cites *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458 (6th Cir. 2019), *cert. denied,* 140 S. Ct. 1117 (2020). *Huff* concerns a procedural violation of the FCRA which occurred when a check verification company report omitted information regarding the plaintiff's checking accounts. *Id.* at 461. After discussing *Spokeo* and *Hagy*, as well as other cases, the Sixth Circuit determined that "because Congress has not attempted to show how *technical* violations of the Fair Credit Reporting Act that carry no actual consequences or real

risk of harm are concrete injuries, … Huff has not been injured in this case." *Id.* at 467 (emphasis added).

Finally, Defendant provides supplemental authority, *Jones-Bell v. Dynamic Recovery Solutions LLC*, 2019 WL 4746766 (E.D. Mich.). The facts in *Jones-Bell* closely resemble those in this case. The plaintiff received a letter setting forth three options to settle her debt for an amount less than she owed. *Id.* at * 1. One of the options consisted of four payments which totaled two cents more than "the advertised full payment amount...." *Id.* The plaintiff sued on behalf of herself and a putative class under Sections 1692e and 1692f of the FDCPA, like Plaintiff in this case. *Id.* In addressing the Article III standing issue, the district court cited *Spokeo* and its progeny. *Id.* at *3. The district court concluded that the plaintiff failed to establish that the "minor error contained in an offer to settle a debt for less than the amount owed" harmed a congressionally recognized interest, i.e., that the harm constituted "the type of abuse the FDCPA was aimed to prevent." *Id.* Even if the plaintiff had established a congressionally recognized interest, the court determined that the plaintiff failed to allege sufficient facts to show that alleged FDCPA violation "created a material risk of harm to that interest." *Id.*

Significantly, *Spokeo* concerns Article III standing as it pertains to violations of statutorily created rights to procedure. *See Lupia v. Medicredit, Inc.*, 2020 WL 1852423, at *3 (D. Colo.) (noting that "Courts … understand **Spokeo** 'to instruct that an alleged *procedural* violation...manifest[s] concrete injury' if the violation actually harms or presents a material risk of harm to the underlying concrete interest" (quoting *Strubel v.Comenity Bank*, 842 F.3d 181, 190 (2nd Cir. 2016) (emphasis added)). *Casillas*, *Hagy*, and *Huff* applied *Spokeo* Article III

standing principles in the context of procedural violations of statutes such as failing to disclose required information in documents.

With respect to the alleged FDCPA violations at issue in this case, "[a]n overwhelming majority of courts have determined sections 1692e and 1692f of the FDCPA provide *substantive* rights to consumers," i.e., the right to truthful and fair disclosures, not *procedural* rights like those *Spokeo, Casillas*, *Hagy*, and *Huff* dealt with. *Gause v. Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1198 (M.D. Fla. 2019) (emphasis added). Although *Bock* refers to a Section 1692e violation, the plaintiff there did not allege that the failure to file a state complaint with meaningful attorney review resulted in false, deceptive, or misleading information, the kind of substantive information Section 1692e prohibits. *See Bock v. Pressler & Pressler, LLP*, 30 F. Supp. 3d 283, 291 (D.N.J. 2014), *as corrected* (July 1, 2014), *as corrected* (July 7, 2014) (noting that "Bock does not assert here that Pressler's original debt collection letter was misleading, in violation of the FDCPA"). Accordingly, *Bock* does not address a violation of a substantive FDCPA right despite the reference to Section 1692e. Consequently, as with *Spokeo*, *Casillas*, *Hagy*, and *Huff*, *Bock* concerned a procedural violation.

As to *Jones-Bell*, the district court in that case applied *Spokeo's* Article III standing principles concerning procedural violations to substantive violations of Sections 1692e and 1692f, the same substantive violations Plaintiff alleges in this case. The question, then, is whether the district court in *Jones-Bell* correctly applied the *Spokeo* Article III principles concerning procedural violations to substantive FDCPA violations and whether this Court, likewise, should apply those *Spokeo* Article III principles to this case.

The district court in *Gause v. Med. Bus. Consultants, Inc.* recently reviewed "dozens (and dozens) of circuit and district court decisions interpreting the Supreme Court's standing

11

jurisprudence and applying it to myriad consumer protection statutes, such as the FDCPA" and determined that standing "turns on whether" the violated statutory right "is substantive or merely procedural." 424 F.Supp.3d at 1190. After summarizing *Spokeo's* discussion of "the issue of standing in the context of a procedural statutory violation," the district court observed that "[a] majority of the Supreme Court has yet to specifically address the interplay of substantive versus procedural statutory rights and their import on a plaintiff's standing to sue for alleged violations of federal (or state) consumer protection statutes, such as the FDCPA." *Id.* at 1190-93. Nonetheless, after analyzing Eleventh Circuit and Ninth Circuit cases, as well as numerous district court cases, the district court in *Gause* found that those cases "have distinguished between violations of statutorily mandated procedures and violations of substantive statutory rights in determining whether a plaintiff has suffered a concrete injury in fact sufficient to confer Article III standing." *Id.* at 1196. From those cases, the district court gleaned that if "the statutory provision at issue confers one or more *substantive* rights, the plaintiff need only allege the infringement of the statute itself, as the infringement of the right(s) conferred by the statute invariably harms the interest(s) the statute was enacted to protect and thus *ipso facto* constitutes a concrete injury in fact." *Id.* at 1197.

Citing numerous cases and acknowledging Congress' intent in passing the FDCPA to "elevate[] consumers' entitlement to truthful and fair validation disclosures to the status of a legally cognizable, redressable injury under federal law," the district court concluded that a plaintiff alleging a violation of either Section 1692e or Section 1692f, both of which provide substantive rights, "need not allege any harm that could exist independent of the violation itself to demonstrate a concrete injury for purposes of Article III standing." *Id.* at 1999-1200; *see also Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018) (observing that in

"wake of *Spokeo*" Second Circuit held "in non-binding summary orders, that §§ 1692e and 1692g protect an individual's concrete interests, so that an alleged violation of these provisions satisfies the injury-in-fact requirement of Article III"); *Cooper v. Stephen Bruce & Assocs.*, 2019 WL 97826, at *4 (W.D. Okla.) (concluding that "where a plaintiff alleges that a defendant violated the FDCPA by including a materially misleading statement in a debt-collection letter … she need not allege any further harm to demonstrate a concrete injury for purposes of constitutional standing" (citations omitted)).

Considering the above persuasive caselaw, the district court in *Jones-Bell* erred by applying *Spokeo* Article III standing principles related to procedural violations to a case alleging violations of substantive rights under Sections 1692e and 1692f.  The *Jones-Bell* court, thus, should have found that Article III standing existed based on those alleged violations alone. *Jones-Bell*, therefore, does not control the outcome in this case.  Instead, the Court employs the sound reasoning in *Gause* to conclude that Plaintiff need not allege any further harm to establish an injury in fact because she alleges violations of substantive rights under Sections 1692e and 1692f.  Plaintiff, therefore, has met the requirements for establishing Article III standing. Accordingly, a case or controversy exists and this Court has jurisdiction to hear this case.

   *B.  False, Deceptive, or Misleading Statements:  Section 1692e Claim (Count I)*

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation" to collect a debt.  Defendant contends that the payment amounts for the installment options presented in the first linked page "are not false and misleading because they are a representation of the highest payment amount to be made in the installment offer."  (Doc. 26) at 8.  Plaintiff asserts that because the totals for each installment option in the first linked page "appeared progressively more expensive," a debtor would, "logically," choose the three-

month installment option because only $2.00 would be added to the balance of the loan.  (Doc.
34) at 20.

When determining whether an alleged misrepresentation violates Section 1692e, the
Tenth Circuit has "applied an objective standard, measured by how the least sophisticated
consumer would interpret the notice received from the debt collector."  *Ferree v. Marianos,* 129
F.3d 130, 1997 WL 687693, at *1 (10th Cir. 1997) (citation omitted).  The least sophisticated
consumer test asks "how the least sophisticated consumer—one not having the astuteness of a
'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—
understands the notice he or she receives."  *Id.* at * 1 (citation omitted).  "The hypothetical
consumer, however, 'can be presumed to possess a rudimentary amount of information about the
world and a willingness to read a collection notice with some care.'"  *Id.* (citation omitted).
"Even the least sophisticated debtor is bound to read collection notices in their entirety."
*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008).

The fact that a given statement may be factually true does not necessarily indicate that it
is not misleading.  *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 761 (7th Cir. 2006)
(recognizing that "statement may be literally true, in some cases" but "the literal truth may
convey a misleading impression").  On the other hand, "a statement made by a debt collector that
is technically false but in no way misleading does not run afoul of § 1692e."  *Lox v. CDA, Ltd.*,
689 F.3d 818, 822 (7th Cir. 2012).   In other words, a statement is misleading if "it fails to
convey [the required] information clearly and effectively and thereby makes the least
sophisticated consumer uncertain as to her rights."  *Miller v. Wolpoff & Abramson, L.L.P.*, 321
F.3d 292, 309 (2d Cir. 2003).

In evaluating the least sophisticated consumer standard in the summary judgment context, this Court has observed that "courts have increasingly treated as questions of law, various judgments about the way in which the least sophisticated consumer would interpret particular debt collection claims." *Lucero v. Bureau of Collection Recovery, Inc.*, 2012 WL 681797, at *13 (D.N.M.) (quoting *Schweizer v. Trans Union Corp.,* 136 F.3d 233, 237–38 (2d Cir.1998) (internal quotation marks omitted)).  The United States Supreme Court has also noted in *dicta* that "the application of the FDCPA to [undisputed] facts is a question of law," and that the lower court "therefore properly granted summary judgment" on the issue of whether a practice was "false, deceptive, and misleading."  *Sheriff v. Gillie*, 136 S. Ct. 1594, 1603 n.7 (2016).  The Supreme Court's *dicta* is consistent with the Second, Fourth, and Ninth Circuits, which "have determined that the question [of] whether a communication is false and deceptive in violation of section 1692e is a question of law for the Court."  *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1222 (D. Kan. 2014) (citations omitted).  Although the Fifth, Sixth, Seventh, and Eleventh Circuits have held that whether a communication is false and deceptive in violation of Section 1692e is a question of fact, those courts have "explained that not all cases require a jury trial if material facts are not disputed and the court is able to decide the case as a matter of law based on the language in the collection letter." *Id.*  In fact, at least one district court in the Tenth Circuit has predicted that "the Tenth Circuit would decide that the determination of whether the language in a collection letter is confusing or misleading to the least sophisticated consumer under § 1692e is a question of law."  *Yang v. Midland Credit Mgmt., Inc.*, 2016 WL 393726, at *3 (D. Kan.).  For the above reasons and taking into account that the parties do not dispute the facts related to the least sophisticated consumer issue, the Court will address that issue as a matter of law.

In this case, a least sophisticated consumer would assume from the face of the first linked page that the payments for the three-month installment option would be $529.00; the payments for the six-month installment option would be $265.00; and the payments for the nine-month installment option would be $177.00. The Court, however, would not expect a least sophisticated consumer to independently calculate those payments and discover, as Plaintiff did, that the payments exceed the balance due.  Furthermore, a least sophisticated consumer "is bound to read collection notices in their entirety" and, therefore, would click on the "Choose Option" hyperlinks to fully explore the payment options.  *See Campuzano-Burgos*, 550 F.3d at 299. Having done so, a least sophisticated consumer would find that the payment amounts on the first linked page represented the highest monthly payments and that the payments do not exceed the balance due.  Read as a whole, the linked pages provide sufficiently clear information that a least sophisticated consumer would be certain of his or her rights.  Consequently, the Court concludes, as a matter of law, that the language in the first linked page is neither false, deceptive, nor misleading and, thus, does not violate Section 1692e.  For that reason, the Court will grant Defendant summary judgment as to Count I.  In light of this determination, the Court need not address Defendant's argument regarding the materiality of the allegedly false, deceptive, or misleading statements supporting the Section 1692e claim.

C.  *Bona Fide Error Defense:  Sections 1692e and 1692f (Counts I and II)*

Next, assuming the first linked page contains misstatements, Defendant argues that it is entitled to a *bona fide* error defense as to Counts I and II because it "maintains a policy and procedure to prevent overpayment making it impossible for Plaintiff to overpay…."  (Doc. 41) at 10.  Plaintiff argues that Defendant's policy and procedure do not address her claim that Defendant designed the first linked page to have a "misleading appearance."  (Doc. 34) at 29.

16

Under the FDCPA,

[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  To prove this affirmative defense, a defendant must establish that the FDCPA violation was "(1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006).

  *1. Unintentional Element*

To satisfy the first element of the *bona fide* error test, "a debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional." *Id.* at 728.  In other words, a debt collector may have acted deliberately but lacked intent to violate the FDCPA. *See Nielsen v. Dickerson,* 307 F.3d 623, 641 (7th Cir. 2002) (debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate").  This first element "is a subjective test" which "can often be shown by inferential evidence." *Johnson*, 443 F.3d at 728.

In this case, inferential evidence exists within the first linked page that Defendant did not intend to violate the FDCPA by providing misleading installment payment information. Specifically, the first linked page does not permit consumers to sign up for any of the installment options presented on that page but, instead, directs interested consumers to click on the "Choose Option" hyperlinks to access pages with complete payment information and sections for entering payment information.  Hence, no reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could find that Defendant subjectively intended for consumers to sign up for any of the installment options, as presented, in the first linked page.

Nonetheless, Plaintiff asserts that Defendant intentionally rounded up the monthly

installment payments to obtain even payment amounts.  Defendant does not dispute that it acted

deliberately when it calculated installment payments in that manner.  That deliberate action,

however, only underlies the alleged FDCPA violation, i.e., that Defendant presented misleading

information on the first linked page.  Accordingly, no reasonable jury could find that

Defendant's payment calculation method demonstrates a subjective intent to violate the FDCPA.

In sum, Defendant has carried its burden of demonstrating that no dispute of material fact exists

regarding the unintentional element.

### 2.  *Bona Fide Error*

The *bona fide* error element "serves to impose an objective standard of reasonableness

upon the asserted unintentional violation."  *Johnson*, 443 F.3d at 729 (citation and internal

quotation marks omitted).  Therefore, "[t]o be considered a bona fide error, the debt collector's

mistake must be objectively reasonable."  *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350,

1353 (11th Cir. 2009) (citing *Johnson,* 443 F.3d at 729).  To satisfy the *bona fide* error element,

a debt collector also must show that its violation "was an error made in good faith; a genuine

mistake, as opposed to a contrived mistake."  *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d

530, 538 (7th Cir. 2005).

Defendant designed the first linked page in such a way that interested consumers had to

click on the "Choose Option" hyperlinks to view the entire installment options, including

payment amounts and payment dates, and to sign up for the selected installment plan.  As noted

above, the first linked page did not provide a mechanism for setting up a payment plan based on

the displayed monthly payments.  Even viewing the above evidence in the light most favorable to

Plaintiff, no reasonable jury could find that Defendant acted unreasonably or in bad faith by

presenting the highest payment in the first linked page when Defendant purposefully included the "Choose Option" hyperlinks in the first linked page and did not provide a payment section in the first linked page.  Furthermore, Plaintiff does not present any material evidence to contradict a finding of a *bona fide* error.  Accordingly, Defendant has carried its burden of demonstrating that no dispute of material fact exists regarding the *bona fide* error element.

### 3. *Maintenance of a Procedure Reasonably Adapted to Avoid the Error*

The final element regarding the maintenance of a procedure reasonably adapted to avoid the error "involves a two-step inquiry: first, whether the debt collector 'maintained' – i.e., actually employed or implemented – procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson*, 443 F.3d at 729.  This final element is an objective inquiry.  *Id.*

Defendant presented evidence that it has a procedure in place whereby a consumer cannot overpay a balance. Plaintiff argues that this procedure does not address the specific error at issue, a deceptive first linked page.  Defendant, however, also has a procedure embedded in the design of the first linked page to address any misstatements in the first linked page, namely, the "Choose Option" hyperlinks as well as the consumer's inability to pay for an installment option based on the installment payments displayed in the first linked page.  No reasonable jury viewing the first linked page in the light most favorable to Plaintiff could find that the "Choose Option" hyperlinks and the lack of a payment section in the first linked page were not "reasonably adapted" to avoid confusion about the exact installment payment amounts a consumer could sign up for.  Consequently, Defendant has carried its burden of demonstrating that no dispute of material fact exists regarding the procedure element.

*4.  Conclusion*

Defendant has carried its burden of demonstrating that no dispute of material fact exists as to all three elements of the *bona fide* error affirmative defense.  Hence, the Court concludes, as a matter of law, that Defendant is entitled to summary judgment on Counts I and II on the basis of that affirmative defense.  In light of that conclusion, the Court denies Plaintiff's Motion for Certification as a Class Action as moot.

IT IS ORDERED that

1.  Defendant's Motion for Summary Judgment (Doc. 26) is granted;

2.  summary judgment will be entered in Defendant's favor as to Counts I and II;

3.  Plaintiff's Motion for Certification as a Class Action (Doc. 29) is denied as moot; and

4.  this lawsuit will be dismissed with prejudice.

UNITED STATES DISTRICT JUDGE